# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

(Filed: June 29, 2020)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| HEATHER DOUCETTE, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 18-1161V |
| | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Reasonable |
| AND HUMAN SERVICES, | * | Basis. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

Bridget C. McCullough, Muller Brazil, LLP, Dresher, PA, for petitioner.
Darryl R. Wishard, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On August 9, 2018, Heather Doucette ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2] Petitioner alleges that as a result of the influenza ("flu") vaccine on October 14, 2016, she suffered from Guillain-Barré syndrome ("GBS"). Petition at 1. On January 16, 2020, the undersigned issued a decision dismissing petitioner's case. Decision dated Jan. 16, 2020 (ECF No. 40).

For the reasons discussed below, the undersigned **GRANTS** petitioner's motion and awards $11,203.69 in attorneys' fees and costs.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

I.  **BACKGROUND**

    A.  **Procedural History**

Petitioner filed her claim with various medical records on August 9, 2018. Petition (ECF No. 1); see Petitioner's Exhibits ("Pet. Exs.") 1-8. Petitioner filed additional medical records in October 2018 and June 2019. Pet. Exs. 9-11.

On July 3, 2019, respondent filed his Rule 4(c) Report, arguing against compensation, and a motion to dismiss. Respondent's Report ("Resp. Rept.") at 1 (ECF No. 26); Motion to Dismiss, filed July 3, 2019 (ECF No. 27). Petitioner filed a supplemental affidavit and her response to respondent's motion to dismiss on July 15, 2019. Pet. Ex. 12; Pet. Response to Motion to Dismiss, filed July 15, 2019 (ECF No. 29).

On December 4, 2019, petitioner filed a motion for a decision dismissing her petition, stating that "[a]n investigation of the facts and science supporting her case has demonstrated to petitioner that she will be unable to prove that she is entitled to compensation" and "to proceed further would be unreasonable and would waste the resources of the Court, the respondent[,] and the Vaccine Program." Petitioner's Motion for Decision Dismissing Her Petition, filed Dec. 4, 2019, at ¶¶ 1-2 (ECF No. 38). Respondent did not file a response, and the undersigned issued a decision dismissing petitioner's case on January 16, 2020.

On March 8, 2020, petitioner filed an application for attorneys' fees and costs. Petitioner's Application for Attorneys' Fees and Costs ("Pet. Mot."), filed Mar. 8, 2020 (ECF No. 45). Petitioner's counsel requested $10,481.70 in fees and $721.99 in costs, for a total request of $11,203.69. Id. at 2. Respondent filed a response on March 15, 2020, opposing petitioner's motion for fees and costs on the grounds that the claim lacked a reasonable basis. Respondent's Opposition to Petitioner's Motion for Attorneys' Fees and Costs ("Resp. Response"), filed Mar. 15, 2020 (ECF No. 46). Respondent emphasized that petitioner's medical records filed with her petition did not support a finding that petitioner suffered the residual effects of her vaccine-related injury for more than six months, and thus, petitioner's claim lacked reasonable basis when filed and it was never established. Id. at 5-6. In her reply dated March 19, 2020, petitioner maintained that her petition possessed reasonable basis. Pet. Reply to Resp. Response ("Pet. Reply"), filed Mar. 19, 2020 (ECF No. 47).

This matter is now ripe for adjudication.

    B.  **Factual History**[3]

On October 14, 2016, petitioner received a flu vaccine. Pet. Ex. 1 at 1. On October 19, 2016, petitioner presented to urgent care complaining of lightheadedness, heart racing, shortness of breath, and sinus pressure. Pet. Ex. 2 at 3. Petitioner reported "[n]ot feeling [r]ight" and expressed concern about a reaction to her recent flu vaccine. Id. Petitioner was positive for fever, dyspnea, heart racing, dizziness, headache, food allergies, and seasonal allergies. Id. She

---

[3] Although the undersigned has reviewed all of the medical records and other evidence in this case, for purposes of efficiency, this history is largely taken from respondent's Rule 4(c) Report. For a more detailed factual history, see Resp. Rept. at 1-10; Pet. Reply at 5-8.

2

was diagnosed with sinusitis, tachycardia, and microscopic hematuria, and prescribed a Z-pack antibiotic. Id. at 9.

On October 20, 2016, petitioner saw her primary care physician ("PCP"), advanced registered nurse practitioner ("ARNP"), Brittani Losapio. Pet. Ex. 3 at 57. She reported her receipt of a "flu shot last Thursday" and that she felt "fine that day," but has some abdominal pain and nausea over the weekend. Id. On exam, her oropharynx was inflamed. Id. at 60. The assessment was pharyngitis, pyrexia, and distressed respirations. Id. at 61-62. The plan noted a negative rapid strep test, a negative chest x-ray, a negative D-dimer ruling out pulmonary embolism, and a negative monospot test. Id. at 62. The assessment also stated that this "may be related to adverse reaction to flu vaccine versus viral illness." Id. at 63.

Petitioner was seen at West Marion Community Hospital Emergency Department on November 3, 2016 for dizziness, palpitations, and nausea. Pet. Ex. 4 at 17. She stated that she had the same symptoms three weeks prior and had an upper respiratory infection two weeks before. Id. Exam noted no motor deficits, no sensory deficits, and her cranial nerves were intact. Id. at 19. Her white blood count ("WBC") was high at 13.1 (normal range 3.7-11.0), her free T3 was high at 4.3 (normal range 2.5-3.9), and her urine hemoglobin was noted as "small." Id. at 20-22. The primary impression was vertigo, and the secondary impressions were anxiety about health and dizziness. Id. at 23.

On November 7, 2016, petitioner saw an allergist, reporting her above medical history and that over the past year, she had some shortness of breath with walking up stairs. Pet. Ex. 5 at 2. She noted some itching and a burning sensation in her ribs when off her allergy medications. Id. The allergist further noted "symptoms have been present for some nasal symptoms for about 10 years, shortness of breath for about 1 year with walking stairs. Some additional recent symptoms this past month. The symptoms are severe recently." Id. The assessment was reaction to food, environmental and seasonal allergies, and shortness of breath. Id. at 5.

Subsequently, on November 9, 2016, petitioner saw her PCP for a "3 week history of tachycardia, shortness of breath, [and] bouts of nausea since having the flu shot." Pet. Ex. 3 at 49. The exam noted slight abdominal tenderness in the right upper quadrant, and normal sensation. Id. at 52-53. The assessment was abdominal pain, anxiety disorder, and distressed respirations. Id. at 53.

The next day, November 10, 2016, petitioner was seen by Dr. Ali Nasser, a cardiologist, for palpitations and shortness of breath. Pet. Ex. 6 at 7. She reported her medical history, including "feeling ill 1 week after receiving [flu vaccine] and getting short of breath, tight in the chest, fatigue, muscular pain, malaise, tachycardia[,] and nausea." Id. at 9. Her review of symptoms ("ROS") noted a resolved fever, night sweats, shortness of breath when walking, palpitations, no chest pain, nausea, muscle aches, no muscle weakness, no joint pains, and frequent or severe headaches. Id. On exam, she was anxious. Id. Her lung cardiovascular exams were normal, and her neurologic exam noted normal gait, strength, and tone. Id. The EKG PR interval was normal, and the interpretation was normal. Id. at 9-10. The assessment was viral disease, adverse reaction, and "[c]omplication of immunization . . . [m]ost likely mild systemic inflammatory reaction due to [flu vaccine], with mild pericarditis and pneumonitis." Id. at 10.

On November 22, 2016, petitioner visited Dr. John P. Gresh, a rheumatologist, for a positive ANA of 1:160 with a speckled pattern and recent flu-like syndrome. Pet. Ex. 7 at 1. She reported feeling well until approximately one month ago when she received a flu shot. Id. On exam, she had no adenopathy. Id. at 2. Her lungs were clear, and her musculoskeletal exam noted full range of motion ("ROM") with no joint swelling, tenderness, synovitis, or deformity. Id. at 2-3. She had no focal weakness or sensory deficits, her gait was normal, and her fibromyalgia zones were not tender. Id. at 3. The assessment was ANA titer above reference range, but her symptoms did not suggest an underlying connective tissue disease. Id. Other assessments included myalgia, fatigue, and viral syndrome. Id. Dr. Gresh prescribed a Medrol Dosepak. Id.

She again saw Dr. Gresh on November 29, 2016. Pet. Ex. 7 at 5. "She noted that while on Medrol[,] she felt less muscle fatigue and noted that the 'pulsing' in her muscles [] nearly resolved." Id. Since stopping the Medrol, she noted a "recurrence of some tingling in her legs in the sense of easy fatigability." Id. Her lab studies performed at the last visit included ANA 1:160 speckled pattern, which was unchanged from prior result. Id. Exam showed no synovitis or joint tenderness and intact ROM in all joints. Id. at 6. Dr. Gresh noted, "it appears she has a hypersensitization/paresthesia-type symptom presentation with the sensation of pulsing or tingling in her extremities. Her examination is completely unremarkable." Id. She was prescribed gabapentin. Id. Dr. Gresh noted, "[c]linically I find no evidence of underlying connective tissue disease and her symptom complex suggests a component of fibromyalgia with the generalized fatigue, myalgias, throbbing/pulsing/tingly paresthesias she is experiencing." Id.

On December 8, 2016, petitioner saw Dr. Nasser for "full body tremors at bedtime and is anxious to know what is going on with her health." Pet. Ex. 6 at 4. She "[c]ontinues to have tremors" that cannot be explained, and Dr. Nasser noted "[t]hey sound like neuropathy with repeated gamma fibers discharge." Id. at 6. On exam, no abnormalities were noted. Id. The assessment was viral disease, adverse reaction, complication of immunization, and chills. Id. Dr. Nasser noted petitioner could have a mild case of sensory GBS. Id. at 7.

On January 6, 2017, petitioner was seen by her PCP for a lab review and reported "feeling [a lot] better" after diagnosis of non-motor GBS. Pet. Ex. 3 at 40. Petitioner further states "[h]er specialist[s] are all thinking this is an adverse reaction to the flu." Id. She was taking propranolol for residual tremors. Id. Her ROS was negative, and her exam showed no abnormalities, with "no decreased response to pain and temperature stimulation of leg/foot." Id. at 41-44. The assessment was viral vaccination reaction, tremor, myalgia, and myositis. Id. at 44. An allergy to the flu vaccine was noted. Id. at 41.

Petitioner was seen by Dr. Nasser for a follow-up on February 16, 2017. Pet. Ex. 6 at 2. Overall, she was doing much better but continued "to have tremors in rare occasions. . . . They sound like neuropathy with repeated gamma fibers discharge." Id. at 3. Dr. Nasser "suspect[ed] . . . Pure Sensory [GBS] due to a reaction to [f]lu [v]accine." Id. Dr. Nasser noted petitioner's shortness of breath, tightness in chest, fatigue, muscular pain, malaise, tachycardia, and nausea have fully resolved. Id. The assessment was complication of immunization, and petitioner was "[r]eassured once again." Id. at 4.

On July 21, 2017, petitioner was seen by her PCP for dizziness. Pet. Ex. 3 at 33. She had no nausea, vision changes, or speech difficulties. Id. Her ROS was positive for dizziness and vertigo, and her exam was positive for impaired balance. Id. at 34-37. She had no other

4

neurologic abnormalities. Id. at 36-37. Her vestibular evaluation was positive with a Nylen-Barany maneuver. Id. at 37. Assessment was elevated liver enzymes and vertigo. Id. The plan was to treat her vertigo with Meclizine and obtain further lab studies to assess the elevated liver enzymes. Id. at 38. At her next PCP visit on August 4, 2017, she still had elevated liver enzymes, but had a negative hepatitis panel. Id. at 27. She was asymptomatic. Id. Her ROS and exam noted no abnormalities. Id. at 28-31. The assessment was "[n]onspecific abnormal results of liver function studies," and she was referred to gastroenterology. Id. at 31.

Petitioner saw a gastroenterologist on September 7, 2017, and reported that her symptoms related to the flu vaccination resolved by March 2017. Pet. Ex. 10 at 4.

On November 1, 2017, petitioner was seen by her PCP, complaining of an elevated heart rate, chest pressure, and trouble breathing that started the prior night and lasted a few minutes. Pet. Ex. 3 at 19. At the time of the visit, she had no chest pain or shortness of breath, and her heart rate was normal. Id. She noted she had no fever or abdominal pain, but did have nausea and diarrhea that started the prior night. Id. After a workup, her PCP determined her symptoms were resolved and may have been related to anxiety. Id. at 24, 26.

Petitioner returned to her PCP on January 5, 2018, for "pulsating pains in her arms and legs," and new symptoms of "hot and cold sensation" and "neuropathy type pain when she steps out of the bed." Pet. Ex. 3 at 10. No abnormalities were noted on exam. Id. at 12-14. The assessment was polyneuropathy. Id. at 14. At this visit, petitioner and her PCP discussed the "residual effects from [GBS], MS, and other neurological disorders," and planned to consider an MRI of the brain if symptoms persisted. Id.

On August 20, 2018, she was seen by her PCP for a sore throat, cough, and fever, and was diagnosed with pharyngitis. Pet. Ex. 11 at 5, 8.

## II.     PARTIES' CONTENTIONS

### A.     Petitioner's Contentions

Petitioner contends a reasonable basis existed for the claim for which the petition was brought. Pet. Reply at 1-2. Petitioner's counsel maintains she performed due diligence by making fundamental inquiries prior to filing the claim, and summarized petitioner's medical records as support that a thorough investigation of the claim was completed prior to filing. Id. at 5-8. Petitioner argues that based upon the information contained in the medical records filed with the petition, coupled with petitioner's representations to counsel, it was determined that petitioner's claim was "feasible." Id. at 8.

After consulting with experts regarding petitioner's claim pursuant to the previous special master's direction, petitioner decided to file a motion for a decision dismissing her petition. Pet. Reply at 8-9. Petitioner maintains that "until [p]etitioner could not retain an expert to address [the special master's] directives regarding causation, there was a reasonable basis for the claim for which the [p]etition was brought." Id. at 9. Petitioner argues the medical records filed with the petition "revealed a factual basis to support a feasible claim." Id. When petitioner was unable to retain an expert, necessary steps were taken to withdraw the petition. Id.

B.     **Respondent's Contentions**

Respondent argues that "the petition never had a reasonable basis when filed, and never obtained a reasonable basis during the course of litigation." Resp. Response at 5 n.4. Respondent notes that medical records filed with the petition did not support petitioner's allegation that she suffered residual effects of her vaccine-related injury for more than six months. Id. at 5. Respondent argues that "to have a reasonable basis, a claim must, at a minimum, be supported by medical records or a medical opinion," neither of which were filed here. Id. (citing Everett v. Sec'y of Health & Human Servs., No. 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992)).

Relying on Simmons, respondent argues the petition lacked and never possessed a reasonable basis because petitioner provided no evidence satisfying the Vaccine Act's objective reasonable basis standard. Resp. Response at 5 (citing Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 636 (Fed. Cir. 2017)). Respondent concludes that "absent any objective evidence that petitioner suffered the sequela of her injury for more than six months after vaccination or was hospitalized and underwent surgical intervention," petitioner failed to establish a reasonable basis for her claim and is ineligible for attorneys' fees and costs. Id. (citing Collier v. Sec'y of Health & Human Servs., No. 17-16V, 2018 WL 4401704, at *8 (Fed. Cl. Spec. Mstr. Aug. 22, 2018)).

## III.   DISCUSSION

A.     **Reasonable Basis**

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. Here, respondent does not challenge petitioner's good faith; instead, respondent asserts that petitioner's claim had no reasonable basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014). Instead, it has been described simply as "an objective inquiry unrelated to counsel's conduct." Simmons, 875 F.3d at 636. While incomplete medical records do not prohibit a finding of reasonable basis, Chuisano, 116 Fed. Cl. at 288, the Vaccine Act contemplates "a simple review of available medical records to satisfy the attorneys that the claim is feasible" prior to filing. Silva, 108 Fed. Cl. at 405. However, "[a] claim can lose its reasonable basis as the case progresses." R.K. v. Sec'y of Health & Human Servs., 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1376-77 (Fed. Cir. 1994)).

Here, the undersigned finds petitioner's claim had reasonable basis. Medical records show petitioner was diagnosed with suspected vaccine reaction and pure sensory GBS by her

6

treating physicians. On October 14, 2016, petitioner received a flu vaccine. On October 20, 2016, petitioner presented to her PCP, who assessed that petitioner's condition "may be related to adverse reaction to flu vaccine versus viral illness." Pet. Ex. 3 at 63. On November 10, 2016, petitioner saw a cardiologist who assessed petitioner with viral disease, adverse reaction, and "[c]omplication of immunization . . . [m]ost likely mild systemic inflammatory reaction due to [flu vaccine], with mild pericarditis and pneumonitis." Pet. Ex. 6 at 10.

On November 29, 2016, six weeks post-vaccination, petitioner presented to Dr. Gresh, complaining of pulsing or tingling in her extremities. The undersigned finds petitioner demonstrated symptoms consistent with GBS on this date.[4] On December 8, 2016, Dr. Nasser suspected sensory GBS and assessed "complication of immunization." Pet. Ex. 6 at 6-7. On February 16, 2017, Dr. Nasser again "suspect[ed] this was a case of Pure Sensory [GBS] due to a reaction to [f]lu [v]accine." Id. at 3. The assessment was complication of immunization. Overall, the undersigned finds there is objective medical record evidence and medical opinions to support a finding of reasonable basis to file the petition.

On January 5, 2018, petitioner returned to her PCP for "pulsating pains in her arms and legs," and new symptoms of "hot and cold sensation" and "neuropathy type pain when she steps out of the bed." Pet. Ex. 3 at 10. At this visit, they discussed the residual effects of GBS. Based on this medical record evidence, the undersigned determines that one can reasonably infer that petitioner was experiencing residual sequela at this visit.

Prior cases in the Program have found ongoing monitoring or need for medication to constitute a residual effect. For example, in Faup, the special master concluded that "ongoing need for medication to prevent symptoms and/or relapse of the alleged vaccine-caused illness constitutes a residual effect or complication of that illness." Faup v. Sec'y of Health & Human Servs., No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015). Similarly, the special master in H.S. found continuing physical restrictions to constitute residual effects. H.S. v. Sec'y of Health & Human Servs., No. 14-1057V, 2015 WL 1588366, at *2-3 (Fed. Cl. Spec. Mstr. Mar. 13, 2015). Petitioner in Boman maintained that ongoing gastrointestinal problems, which did not require medical visits, were residual sequela of petitioner's vaccine-related injury. Boman v. Sec'y of Health & Human Servs., No. 15-256V, 2017 WL 7362539, at *3 (Fed. Cl. Spec. Mstr. Sept. 20, 2017). In Boman, the undersigned found petitioner's claim had reasonable basis even though Boman, like petitioner here, could not support her claim with an expert opinion and subsequently moved to dismiss her petition.

---

[4] Petitioners have been compensated for GBS up to eight weeks following flu vaccine. See, e.g., De La Cruz v. Sec'y of Health & Human Servs., No. 17-783V, 2018 WL 945834, at *1 (Fed. Cl. Spec. Mstr. Jan. 23, 2013) (finding onset of GBS more than two months after flu vaccination not compensable); Barone v. Sec'y of Health & Human Servs., No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (noting eight weeks is the longest reasonable timeframe for a flu/GBS injury); Aguayo v. Sec'y of Health & Human Servs., No. 12-563V, 2013 WL 441013, at *3 (Fed. Cl. Spec. Mstr. Jan. 15, 2013); Corder v. Sec'y of Health & Human Servs., No. 08-228V, 2011 WL 2469736, at *27-29 (Fed. Cl. Spec. Mstr. May 31, 2011).

In Wright, B.W.'s doctors continued to monitor B.W.'s vaccine-related injury with blood tests in response to physical symptoms B.W. continued to exhibit more than six months post-vaccination. Wright v. Sec'y of Health & Human Servs., 146 Fed. Cl. 608, 614 (2019). Judge Bruggink found that because B.W.'s doctors monitored B.W.'s condition more than six months after vaccination, such testing and monitoring was causally connected to B.W.'s vaccine injury and a residual effect of his vaccine-related injury. Id. Here, petitioner's PCP continued to monitor—albeit, not as meticulously as B.W.'s treating physicians—the residual effects of GBS with petitioner as evidenced by petitioner's January 5, 2018 visit. The undersigned finds this medical record evidence supports a finding of reasonable basis.

The special master in Sims found medical record evidence from January 2017, which noted petitioner was exhibiting residual sequela following her October 2015 vaccination, supported a finding of reasonable basis. Sims v. Sec'y of Health & Human Servs., No. 17-1913V, 2019 WL 7560420, at *6 (Fed. Cl. Spec. Mstr. Oct. 25, 2019). Here, petitioner's January 5, 2018 medical records similarly show petitioner was experiencing residual sequela related to her October 2016 vaccination. Like the special master in Sims, the undersigned finds "[t]hese records are evidence of [sequela] well in excess of six months from the date of her vaccination." Id.

Respondent relies on Collier in arguing the petition lacked and never possessed a reasonable basis. In Collier, the special master found no reasonable basis existed because there was no supporting objective evidence in the medical records or medical opinions and no evidence that the six-month severity requirement was met. Collier, 2018 WL 4401704, at *7-9. However, as explained above, the undersigned finds objective medical record evidence and medical opinions support a finding of reasonable basis at all times throughout litigation in this matter.

Here, petitioner had reasonable basis to file her petition, but did not have a reasonable basis to sustain her suit due to a lack of expert testimony. Once it became apparent that her claim could not be supported by an expert, petitioner promptly moved to dismiss her case. The undersigned finds it was appropriate to both file and timely dismiss this petition. Because the undersigned finds that petitioner's claim had reasonable basis, she will award reasonable attorneys' fees and costs.

**B.    Reasonable Attorneys' Fees**

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the

name of the person performing the service.  See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008).  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522.  Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond.  See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009).  A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees.  Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (2011).

Here, petitioner requests the following hourly rates for the work of her attorneys: for Mr. Max Muller, $275.00 per hour for work performed in 2016, $300.00 per hour for work performed in 2017, $317.00 per hour for work performed in 2018, and $325.00 per hour for work performed in 2019; and for Ms. Bridget McCullough, $225.00 per hour for work performed in 2018-2019, and $250.00 per hour for work performed in 2020.  Petitioner requests paralegal rates of $125.00 to $140.00 per hour depending on the individual and the year the work was performed.  Petitioner also requests a registered nurse rate of $165.00 per hour in 2018.

The undersigned finds these rates to be consistent with what Muller Brazil LLP attorneys and staff[5] have previously been awarded for their Vaccine Program work.  See, e.g., Allen v. Sec'y of Health & Human Servs., No. 18-60V, 2020 WL 1896677, at *2 (Fed. Cl. Spec. Mstr. Mar. 18, 2020); Knapp v. Sec'y of Health & Human Servs., No. 18-1003V, 2020 WL 1902406, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2020).  Ms. McCullough proposed that her 2020 hourly rate be increased to $250.00, which represents a $25.00 per hour increase from her prior 2018 and 2019 rates.  See Pet. Mot. Ex. A.  The undersigned finds the proposed rate reasonable, as it remains consistent with the rates reflected in the Office of Special Masters' Attorneys' Forum Hourly Rate Fee Schedule[6] for an attorney of counsel's experience and it is consistent with recent SPU decisions awarding attorneys' fees.[7]  Moreover, the undersigned finds the amount of the increase to be reasonable in consideration of counsel's increased experience and quality of work as well as increases in the cost of legal services generally.  Thus, the undersigned awards

---

[5] The undersigned finds a rate of $165.00 for the work of a registered nurse to be reasonable based on the significant added value a registered nurse brings to medically complex cases in the Vaccine Program.  See, e.g., Cagle v. Sec'y of Health & Human Servs., No. 16-693V, 2019 WL 1894410, at *2 (Fed. Cl. Spec. Mstr. Mar. 28, 2019) (compensating a paralegal with experience as a registered nurse at $165.00 per hour); Elliott v. Sec'y of Health & Human Servs., No. 14-661V, 2016 WL 6694970, at *2 n.5 (Fed. Cl. Spec. Mstr. Oct. 18, 2016) (same).

[6] The 2020 Fee Schedule can be accessed at http://www.cofc.uscourts.gov/sites/default/files/Attorneys–Forum–Rate–Fee–Schedule–2020.pdf.

[7] See, e.g., Love v. Sec'y of Health & Human Servs., No. 18-1840V, 2020 WL 2461908 (Fed. Cl. Spec. Mstr. Apr. 10, 2020); Edwards v. Sec'y of Health & Human Servs., No. 18-0646V, 2020 WL 1910699 (Fed. Cl. Spec. Mstr. Mar. 20, 2020).

9

Ms. McCullough a rate of $250.00 per hour for work performed in 2020. Accordingly, the undersigned finds the requested rates are reasonable and will therefore award the rates requested.

Furthermore, the undersigned determines that the hours billed are reasonable.[8] The billing entries accurately reflect that nature of the work performed. Therefore, the undersigned will award the fees requested.

### C. Reasonable Costs

#### 1. Other Costs

Petitioner also requests $721.99 for miscellaneous costs, including the filing fee and medical records. See Pet. Mot., Ex. B. Because these costs are reasonable and well-documented, the undersigned will reimburse them in full.

## IV. CONCLUSION

For the reasons discussed above, the undersigned finds that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $ 10,481.70 |
| Attorneys' Fees Awarded | $ 10,481.70 |
| Attorneys' Costs Requested: | $ 721.99 |
| Attorneys' Costs Awarded | $ 721.99 |
| **Total Attorneys' Fees and Costs Awarded** | **$ 11,203.69** |

**The undersigned hereby awards the amount of $11,203.69, in the form of a check made payable jointly to petitioner and petitioner's counsel, Bridget McCullough.**

The Clerk of Court shall enter judgment in accordance herewith.[9]

**IT IS SO ORDERED.**

                                                  **s/Nora Beth Dorsey**
                                                  Nora Beth Dorsey
                                                  Special Master

---

[8] The undersigned notes that some work was duplicative and non-reimbursable. However, the duplicative and non-reimbursable work was not substantial, and thus, the undersigned will reimburse petitioner's counsel in full. Counsel is cautioned against continuing to bill duplicative and non-reimbursable work in the future.

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.